# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| KEVIN CAMPBELL, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> FAF, INC., FORWARD AIR CORPORATION, PRIORITY CAPITAL GROUP D/B/A PRIORITY LEASING, and ODYSSEY TRANSPORT, LLC, <br><br> *Defendants.* | Case No. 2:19-cv-00107-DCLC-CRW <br><br> Judge Clifton L. Corker |

## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT, FOR ATTORNEYS' FEES AND COSTS, AND FOR SERVICE AWARD; <u>MEMORANDUM IN SUPPORT THEREOF</u>

TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

Plaintiff, Kevin Campbell, moves the Court for final approval of the Joint Stipulation of Settlement and Release of Class and Collective Action (the "Settlement," attached as **Exhibit A** to the accompanying Declaration of Carolyn Hunt Cottrell) as to the Class, and approval of the Settlement as to the Collective. The Settlement globally resolves all claims in this action on a class and collective basis. Therefore, Plaintiff moves for an order:

(1)     Granting final approval of the Settlement as to the Class;

(2)     Certifying the Class for settlement purposes;

(3)     Finally approving Schneider Wallace Cottrell Konecky LLP and Law Offices of Robert S. Boulter as Counsel for the Class and Collective ("Class Counsel");

(4)     Finally approving Class Counsel's request for attorneys' fees and costs;

(5)     Finally approving Plaintiff Kevin Campbell, as Class Representative for the Class and as Collective Representative for the Collective;

(6)     Finally approving payment of $4,000.00 from the Settlement to the Settlement Administrator, Simpluris, Inc., as compensation for administering the Settlement;

(7)     Entering final judgment with the terms of the Settlement; and

(8)     Finally approving the following implementation schedule:

| | |
|---|---|
| Effective Date | the date when all of the following events have occurred: (a) this Settlement is fully executed; (b) the Court has given preliminary approval to the Settlement; (c) notice has been given to the Class Members providing them with an opportunity to opt-out of the Settlement; (d) the Court has held a Final Approval and Fairness Hearing and entered a final order and judgment certifying the Class and approving this Stipulation; and (e) in the event there are written objections filed prior to the Final Approval and Fairness Hearing that are not later withdrawn, the later of the following events: when the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; or any appeal, writ, or other appellate proceeding opposing the Settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or any appeal, writ, or other appellate proceeding has upheld the Court's final order with no right to pursue further remedies or relief. In this regard, it is the intention of the Parties that the Settlement shall not become effective until the Court's order approving the Settlement is completely final and there is no further recourse by an appellant or objector who seeks to contest the Settlement. In the event that no objections are filed, the Effective Date shall be after steps (a) through (d) have been completed. |
| Deadline for Defendants to deposit the Gross Settlement Amount into the Qualified Settlement Account | Within 14 days after the Effective Date |
| Deadline for Simpluris, Inc. to make payments under the Settlement to all Class Participants and Opt-In Plaintiffs, Class Representative, Plaintiff's counsel, and itself | Within 28 days after the Effective Date |
| Check-cashing deadline | 180 days after issuance |
| Deadline for Simpluris, Inc. to tender uncashed check funds to the unclaimed property fund of the states of which the Class Participant or Opt- | As soon as practicable after check-cashing deadline |

2

| In Plaintiff is a resident with the identity of such individual to whom the funds belong | |
|---|---|

Plaintiff brings this Motion pursuant to Federal Rules of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Carolyn Hunt Cottrell, the Declaration of Robert S. Boulter, and all other records, pleadings, and papers on file in the consolidated and related actions and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiff also submits a Proposed Order Granting Final Approval of Class and Collective Action Settlement and a Proposed Judgment with his moving papers.

Dated: June 24, 2021             Respectfully submitted,

*/s/ David C. Leimbach*
Carolyn H. Cottrell (admitted *pro hac vice*)
David C. Leimbach (admitted *pro hac vice*)
Michelle S. Lim (admitted *pro hac vice*)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com
mlim@schneiderwallace.com

Robert S. Boulter (admitted *pro hac vice*)
LAW OFFICES OF ROBERT S. BOULTER
1101 Fifth Avenue, Suite 310
San Rafael, California 94901
Telephone: (415) 233-7100
rsb@boulter-law.com

Attorneys for Plaintiff, the putative Class and Collective

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

MOTION FOR FINAL APPROVAL OF SETTLEMENT ........................................................ 1

MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT ......................... 2

I.      BACKGROUND .............................................................................................. 2

      A.    Procedural Background................................................................................ 2

      B.    Factual Background. ................................................................................... 4

      C.    Preliminary Approval and Notice of Settlement and Response of Class Members. ............................................................................................... 5

II.     KEY TERMS OF SETTLEMENT .................................................................. 6

III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AS TO THE CLASS ................................................................................................ 8

      A.    The Terms of the Settlement Are Fair, Reasonable, and Adequate. ....................... 8

              1.    The Settlement is the result of good-faith, arduous, and arm's length negotiations between experienced and capable counsel fully informed with extensive informal discovery and investigation, and there is no hint or collusion between or among the parties. ..................................................... 8

              2.    This Action is a complex class and collective action, and continued litigation will consume significant resources of the parties and the Court. ................................................................................................. 10

              3.    The Settlement provides the Class with immediate and substantial relief, particularly in light of the fact that serious questions of law and fact exist, placing the outcome of this Action in doubt. ........................................... 11

              4.    Plaintiff's Counsel and the Plaintiff believe the Settlement is fair, adequate, and reasonable and in the best interests of the Class. .............. 13

              5.    The best practicable notice was provided to the Class Members in accordance with the process approved by the Court................................. 14

      B.    The Court Should Finally Certify the Class........................................................ 15

IV.    THE COURT SHOULD GRANT PLAINTIFF'S AND CLASS COUNSEL'S REQUESTS FOR SERVICE AWARD AND ATTORNEYS' FEES AND COSTS ....... 17

A.    Plaintiff's Requested Service Award Is Reasonable and Should be Granted. ....... 17

B.    The Requested Attorneys' Fees and Costs Are Reasonable. ................................ 18

    1.    The requested attorneys' fees should be approved pursuant to the percentage of the fund method. .................................................................. 19

    2.    The requested attorneys' fees are reasonable. ........................................... 20

V.    CONCLUSION ............................................................................................................ 23

# TABLE OF AUTHORITIES

**CASES**

*Afro Am. Patrolmen's League v. Duck*
  503 F.2d 294 (6th Cir.1974) ................................................................................................ 15

*Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*
  133 S. Ct. 1184 (2013)......................................................................................................... 17

*Bailey v. Great Lakes Canning, Inc.*
  908 F.2d 38 (6th Cir. 1990) ................................................................................................... 8

*Barnes v. Winking Lizard Inc.*
  2019 WL 1614822 (N.D. Ohio March 26, 2019) ................................................................. 19

*Beattie v. CenturyTel, Inc.*
  511 F.3d 554 (6th Cir. 2007) ............................................................................................... 16

*Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*
  46 F.3d 1392 (6th Cir. 1995) ......................................................................................... 18, 19

*Blodgett v. FAF Inc., et al.*
  Case Number 2:18-cv-00015 ................................................................................................. 3

*Bowling v. Pfizer, Inc.*
  102 F.3d 777 (6th Cir. 1996) .......................................................................................... 19, 20

*Brent v. Midland Funding, LLC*
  No. 3:11-cv1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011)................................... 11, 13

*California v. eBay, Inc.*
  No. 5:12-cv-05874-EJD, 2015 WL 5168666 (N.D. Cal. Sept. 3, 2015) ............................. 11

*Capsolas v. Pasta Res. Inc.*
  2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ........................................................................ 19

*Carnes v. Atria Senior Living Inc.*
  Case No. 14-cv-02727-VC (N.D. Cal. July 12, 2016)......................................................... 21

*Cherry, et al. v. The City College of San Francisco*
  Docket No. C 04-4981 WHA, ECF No. 673 (Apr. 13, 2006 order)...................................... 21

*Dallas v. Alcatel-Lucent USA, Inc.*
  09-14596, 2013 U.S. Dist. LEXIS 71204 (E.D. Mich. May 20, 2013) ................................. 9

*Dillow v. Home Care Network, Inc.*
  No. 2:16-cv-612, 2018 U.S. Dist. LEXIS 170579 (S.D. Ohio Oct. 3, 2018) ....................... 17

*Doyle v. Be Hurd, Inc. et al*
  Case 3:20-cv-138 (E.D. Tenn.)............................................................................................. 20

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974)............................................................................................................. 14

*El Pollo Loco Wage and Hour Cases*
Case No. JCCP 4957.......................................................................................................... 21

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*
137 F.R.D. 240 (S.D. Ohio 1991) ................................................................................. 8, 17

*French v. Essentially Yours Indus., Inc.*
1:07-CV-817, 2008 WL 2788511 (W.D. Mich. July 16, 2008) ............................................. 15

*Gentrup v. Renovo Servs., LLC*
2011 WL 2532922 (S.D. Ohio, June 24, 2011) ..................................................................... 23

*Granada Investments, Inc. v. DWG Corp.*
823 F. Supp. 448 (N.D. Ohio 1993)....................................................................................... 10

*Hainey v. Parrot*
617 F. Supp. 2d 668 (S.D. Ohio 2007) ..................................................................................... 9

*Harbin v. Emergency Coverage Corp.*
No. 3:16-CV-125-TRM-HBG, 2017 U.S. Dist. LEXIS 204281 (E.D. Tenn. Nov. 21, 2017) ... 9

*Hebert v. Chesapeake Operating, Inc.*
2019 WL 4574509 (S.D. Ohio September 20, 2019) ............................................................. 19

*In re Cardizem CD Antitrust Litig.*
218 F.R.D. 508 (E.D. Mich. 2003) ....................................................................................... 11

*In re Delphi Corp. Sec.*
248 F.R.D. 483 (E.D. Mich. 2008) ....................................................................................... 20

*In re Inter-Op Hip Prosthesis Liab. Litig.*
204 F.R.D. 330 (N.D. Oh. 2001) ............................................................................................. 9

*In re Polyurethane Foam Antitrust Litig.*
2012 U.S. Dist. LEXIS 192151 ............................................................................................... 9

*In re Se. Milk Antitrust Litig.*
No. 2:08-MD-1000, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010)....................................... 16

*In re Skelaxin Metaxalone Antitrust Litig.*
No. MDL No. 2343, 2014 U.S. Dist. LEXIS 60214 (E.D. Tenn. Apr. 30, 2014) .................... 15

*In re Synthroid Mktg. Litig.*
264 F.3d 712 (7th Cir. 2001) ................................................................................................. 17

*Int'l Bhd. of Elec. Workers Union No. 8 v. King Elec. Servs., Inc.*
No. 3:13CV864, 2014 WL 1821044 (N.D. Ohio May 8, 2014)............................................. 13

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*
497 F.3d 615 (6th Cir. 2007) ................................................................................................. 10

*Jones, et al. v. CertifiedSafety, et al.*
3:2017-cv-02229 (N.D. Cal. June 1, 2020)............................................................................. 21

*Knapp v. Art.com, Inc.*
   No. 3:16-cv-00768-WHO (N.D. Cal. October 24, 2018) ...................................................... 21

*Levell v. Monsanto Research Corp.*
   191 F.R.D. 543 (S.D. Ohio 2000) ........................................................................................... 8

*Manni v. Eugene N. Gordon, Inc. d/b/a La-Z-Boy Furniture Galleries*
   Case No. 34-2017-00223592 ................................................................................................. 21

*Mehling v. New York Life Ins. Co.*
   248 F.R.D. 455 (E.D. Pa. 2008) ............................................................................................ 19

*Meza v. S.S. Skikos, Inc.*
   Case No. 3:15-cv-01889-TEH (N.D. Cal. May 25, 2016)..................................................... 21

*Mitcham v. Intrepid U.S.A., Inc.*
   2019 U.S. Dist. LEXIS 88864 (W.D. Ky., May 28, 2019).................................................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*
   339 U.S. 306 (1950)............................................................................................................... 14

*New Eng. Health Care Emples. Pension Fund v. Fruit of the Loom, Inc.*
   234 F.3d 627 (W.D. Ky., 2006) ............................................................................................. 19

*Oppenlander v. Standard Oil Co.*
   64 F.R.D. 597 (D. Colo. 1974) .............................................................................................. 11

*Otis v. TAH Pizza, Inc. et al.*
   Case 2:18-cv-00111 (E.D. Tenn.)..................................................................................... 17, 19

*Phillips Petroleum Co. v. Shutts*
   472 U.S. 797 (1985)............................................................................................................... 14

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*
   636 F.3d 235 (6th Cir. 2011) ................................................................................................. 11

*Rawlings v. Prudential-Bache Props.*
   9 F.3d 513 (6th Cir. 1993) ..................................................................................................... 18

*Reiter v. Sonotone Corp.*
   442 U.S. 330 (1979)............................................................................................................... 22

*Rikos v. P&G*
   No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722 (S.D. Ohio Apr. 30, 2018) ........................ 22

*Robinson v. Shelby Cnty. Bd. of Educ.*
   566 F.3d 642 (6th Cir. 2009) ................................................................................................... 8

*Shaw, et al. v. AMN Services, LLC, et al.*
   No. 3:16-cv-02816 (N.D. Cal. May 31, 2019)....................................................................... 21

*Smillie v. Park Chem. Co.*
   710 F.2d 271 (6th Cir. 1983) ................................................................................................. 19

*Smith v. Ajax Magnethermic Corp.*
4:02CV0980, 2007 WL 3355080 (N.D. Oh. Nov. 7, 2007) .................................... 9

*Soto, et al. v. O.C. Communications, Inc., et al.*
Case No. 3:17-cv-00251-VC (N.D. Cal. Oct. 23, 2019)...................................... 21

*Thieriot v. Celtic Ins. Co.*
No. C 10-04462 LB, 2011 U.S. Dist. LEXIS 44852 (N.D. Cal. Apr. 21, 2011) ..................... 21

*UAW v. GMC*
497 F.3d 615 (6th Cir. 2007) ......................................................... 8, 11

*Villalpando v. Exel Direct Inc.*
2016 WL 7740854 (N.D. Cal. Dec. 12, 2016)......................................... 21

*Walls v. JPMorgan Chase Bank, N.A.*
Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325 (W.D. Ky. Oct. 13, 2016) ........ 22

*Wal-Mart Stores, Inc. v. Dukes*
131 S. Ct. 2541 (2011)................................................................ 15

*Weitz & Luxenberg, P.C. v. Sulzer Orthopedics, Inc. (In re Sulzer Orthopedics, Inc.)*
398 F.3d 778 (6th Cir. 2005) ......................................................... 18

*Whitlock v. FSL Mgmt., LLC*
842 F.3d 1084 (6th Cir. 2016) ......................................................... 8

*Whittington v. Taco Bell of Am., Inc.*
2013 WL 6022972 (D. Colo., November 13, 2013) ............................................ 22

*Williams v. Vukovich*
720 F.2d 909 (6th Cir. 1983) ......................................................... 10

*Winans v. Emeritus Corp.*
2016 WL 107574 (N.D. Cal. Jan. 11, 2016)......................................... 21

*Young v. Nationwide Mut. Ins. Co.*
693 F.3d 532 (6th Cir. 2012) ......................................................... 16

## STATUTES

28 U.S.C. § 1715 ......................................................................... 5

29 U.S.C. § 216........................................................................ 2, 3

## OTHER AUTHORITIES

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed.2002) ..... 11, 13

## RULES

Fed. R. Civ. P. 23................................................................. passim

## <u>MOTION FOR FINAL APPROVAL OF SETTLEMENT</u>

Plaintiff Kevin Campbell ("Plaintiff") seeks final approval of the Settlement[1] in this class and collective action (the "Action") on behalf of current and former truck drivers who carried loads throughout the United States, including in California, for Defendants, FAF, Inc., Forward Air Corporation, Priority Capital Group d/b/a Priority Leasing, and Odyssey Transport, LLC ("Defendants"). The Action is based on Defendants' alleged violations of federal, California, and Ohio wage and hour laws.

The Court granted preliminary approval of the Settlement as to the Class and approval of the Settlement as to the Collective on March 30, 2021. Following the Court's approval, notice of the Settlement was sent to the Class and Collective Members[2] via U.S. Mail, and as of the date of this filing, no objections have been filed, no exclusions from the settlement have been requested, and no class members have submitted disputes regarding their number of workweeks. Plaintiff now seeks final approval of the Settlement as to the Class.

The Settlement resolves the claims of approximately 66 Drivers, for a total non-reversionary settlement of $300,000.00. The Settlement resolves numerous wage and hour claims unlikely to have been prosecuted as individual actions, and provides an excellent benefit to the Class and Collective and an efficient outcome in the face of expanding litigation. In particular, the average recovery for each of the Class Members is approximately $2,742.42, with 8 Class Members receiving over $5,000, and the largest recovery being $27,533.67. The Settlement provides an exceptional recovery to resolve these workers' claims and brings closure to two years of intensive litigation, including conditional certification, mediation and exhaustive pre-mediation discovery and outreach, and extensive arm's-length negotiations between counsel.

---

[1] The Joint Stipulation of Settlement and Release of Class and Collective Action ("Settlement") is attached as **Exhibit A** to the accompanying Declaration of Carolyn Hunt Cottrell in Support of Plaintiff's Motion for Final Approval of Class and Collective Action Settlement, for Attorneys' Fees and Costs, and for Service Award ("Cottrell Decl."). At the time of filing of the preliminary approval motion, Plaintiff's counsel was still awaiting signatures for Defendants, and the version filed herewith as Exhibit A was executed by all parties thereafter.
[2] These Class Members and Opt-In Plaintiffs are collectively referred to as "Drivers" herein.

1

Additionally, Class Counsel seeks to recover their reasonable fees and costs of $105,000 – which is well under Class Counsel's current lodestar – to compensate them for their extensive work over the past two years in achieving this class and collective action Settlement pursuant to Fed. R. Civ. P. 23(h) and 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"). The excellent result did not come without extensive effort, skill and substantial risk, including risk of nonpayment, even if Plaintiff was to prevail. Class Counsel also seeks the Court's approval of a service award of $10,000 for Plaintiff Campbell, to recognize the vital role that he played in obtaining substantial relief for his fellow class members and his agreement to a broader release, and as contemplated by the Settlement Agreement.

Given the strong recovery and that the Settlement will provide significant monetary payments to the Class and Collective, Class Counsel respectfully submits that the Court should approve the Settlement forthwith. By any measure, the Settlement provides a great benefit to the Class and Collective and an efficient outcome in the face of expanding litigation. It is fair, reasonable, and adequate in all respects. Accordingly, as set forth herein, Plaintiff respectfully submits that the Settlement should be finally approved and Plaintiff's requests for attorneys' fees and costs and service award should be granted.

## MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

## I.     BACKGROUND

### A.     Procedural Background.

Plaintiff initiated this action on January 22, 2019, in the Southern District of California, and the case was transferred to this Court on June 24, 2019. Plaintiff asserted multiple claims on behalf of a national Collective and three Classes under Fed. R. Civ. P. 23, alleging that Defendants violated the FLSA and under California and Ohio wage and hour laws and consumer protection laws. *See* ECF 1. Plaintiff alleges that Defendants violated the FLSA and the wage and hour laws of California and Ohio, by, *inter alia*, misclassifying drivers as independent contractors instead of employees, failing to pay minimum and overtime wages, failing to provide meal and rest periods, providing inaccurate wage statements, failing to maintain pay records, failing to pay final wages, engaging in unfair competition, unfair or deceptive business acts and practices, and violating

California's common law of fraud and unjust enrichment.

In the Southern District of California, where Plaintiff filed the Action, Defendant Odyssey Transport, LLC ("Odyssey") filed a Motion to Dismiss (ECF 21), Defendant Priority Capital Group ("Priority") filed a separate Motion to Dismiss (ECF 23), and all Defendants filed a Motion to Transfer (ECF 22) and a Motion to Dismiss (ECF 24). Following full briefing and oral argument, the Court ultimately granted Defendants' Motion to Transfer and denied the remaining three motions to dismiss as moot. ECF 41.

In this Court, on October 30, 2019, the Court granted the Parties' stipulation to conditionally certify the Collective.[3] ECF 88. Notice under 29 U.S.C. § 216(b) was disseminated to the 52 members of the conditionally certified Collective, and 17 Collective members have opted-in to this matter as Opt-In Plaintiffs. *See* Cottrell Decl., ¶ 12.

In April 2020 to June 2020, the Parties conducted multiple, arms' length negotiations to determine whether the Parties could informally resolve this matter. *Id*., ¶ 7. These negotiations were unsuccessful, and the Parties ultimately agreed to engage in mediation. *Id.* The Parties conducted informal discovery in advance of mediation. *Id.* Plaintiff's Counsel exhaustively reviewed the settlement data Defendants produced for fifteen Drivers, including voucher number, load number, vendor (driver) name, invoice date, settlement type (e.g., loaded miles, empty miles, fuel surcharge, deductions), description of the settlement (e.g., location to location, fuel, deduction type), and amount to the driver. *Id.,* ¶¶ 7-8. Plaintiff's Counsel also conducted detailed interviews with multiple Drivers, and extensively reviewed these interviews, cross-checked them with Defendants' data, and Plaintiff's personnel file. *Id*., ¶ 8.

On November 4, 2020, the Parties conducted a full day, remotely-held mediation session before mediator Michael Russell. *Id*., ¶ 9. As a result of the mediation, the Parties agreed to settle all claims in the Action on behalf of 66 Drivers, including the Plaintiff, as identified in Exhibit 2

---

[3] The Collective was defined as: All current and former drivers who were classified as independent contractors and provided transportation services for FAF, Inc., Forward Air Corporation, or Odyssey Transport, LLC, at any time during the period beginning three years prior to the filing of the Complaint, and continuing through the present, who have not opted into *Blodgett v. FAF Inc., et al*., Case Number 2:18-cv-00015, filed in the United States District Court for the Eastern District of Tennessee.

of the Settlement. Settlement, ¶ I.4, I.23; Settlement, Ex. 2.

**B.     Factual Background.**

FAF and Forward Air Corporation ("Forward Air") provide trucking and logistics services across the country, including California. ECF 1, Complaint ("Compl.") at ¶ 25.  Odyssey is a fleet operator and compensates drivers for the loads they deliver under FAF's motor carrier authority. *See* Compl. at ¶ 14.  Priority leases semi-tractor trucks to drivers who contracted with Odyssey, and FAF compensates Odyssey; and, based on the contract Odyssey has with drivers and at their behest, Odyssey pays Priority an amount for each driver's lease. *See id.*  More specifically, Odyssey contracts with Priority through a Lease Program Agreement. ECF 23-2, Ex. A ("MLA"), at p. 8, ¶ 1. Drivers are required to enter into a Services Agreement with Odyssey in order to obtain a truck through Priority. MLA at p. 8. Odyssey deducts all lease payments and service and maintenance costs under the MLA, to be remitted back to Priority. MLA, at pp. 8, 10. Drivers like Plaintiff are required to lease trucks from Priority, and are paid by Odyssey, which is in turn paid by FAF. Compl. at ¶ 30.

Drivers then lease the trucks back to Odyssey, to be used exclusively to drive under FAF's motor carrier authority.  *See* ECF 23-3, Declaration of William Zenk ("Zenk Decl."), at ¶ 3; *id.,* Ex. A ("ICOA"), at p. 1; *see* Zenk Decl. at ¶ 4 (to fulfill its "role as fleet operator, Odyssey also contracts" with drivers). The ICOA governs the usage of the trucks. *See* ICOA, at ¶¶ 1(a), 15, Appx. A at p. 29.  The ICOA allows Odyssey to "lease" the very trucks drivers lease from Priority. *Compare* ICOA at p. 47 *with* MLA at p. 3. The ICOA also provides that this equipment is "being operated by or on behalf of" Odyssey as its "owner." *See* ICOA at p. 47. Simply put, "Odyssey provides equipment [. . . and] qualified drivers to provide freight delivery services for FAF's customers." Zenk Decl. at ¶ 3. Through the cumulative effect of the lease agreements and ICOAs, Plaintiff alleges that Defendants collectively and completely control the drivers and the trucks, even though Defendants classify drivers as independent contractors. *See* ECF 1. Through these agreements, Plaintiff alleges that Defendants shift some of their ordinary operating costs onto drivers, such as the costs for trucks, truck maintenance, equipment on the trucks, fuel, late delivery fees, cargo loss or damage, and insurance.  *Id.*  As a result, Plaintiff contends that he and other

drivers suffer systematic violations of California law, including, for missed or noncompliant meal and rest breaks, underpayment of wages, and violations of unfair competition laws and Ohio's minimum wage law. *Id.*

C. **Preliminary Approval and Notice of Settlement and Response of Class Members.**

Pursuant to the Settlement, Simpluris, Inc. ("Simpluris") is responsible for distributing the Notice of Settlement, calculating individual settlement payments, preparing and issuing all disbursements to be paid to Class Members and Opt-In Plaintiffs, the Class Representative, Class Counsel, any applicable local, state, and federal tax authorities, and establishing a toll-free call center to field inquiries from Drivers. Settlement, ¶¶ VI.I, VII.2-5. Simpluris is also responsible for the timely preparation and filing of all tax returns. *Id.,* ¶¶ IV.2, IV.4, V.2.

The Court granted preliminary approval of the Settlement on March 30, 2021. ECF 127. Following that order, Simpluris received the Class List containing the names, last known mailing addresses, last known person email addresses, workweeks in each of the various jurisdictions, and other personal information for the Drivers. Cottrell Decl., ¶ 16. Simpluris sent notice of the Settlement to the Class Members via U.S. Mail and e-mail on April 27, 2021. *Id.*, ¶¶ 17-18. The deadline for class members to object or opt-out to the settlement is June 28, 2021. *Id.,* at ¶ 18. As of June 18, 2021, zero objections and exclusions have been filed or requested, and zero class members have submitted disputes regarding their number of workweeks. *Id.*[4]

To date, notices were mailed to all 66 Class Members, 11 notices were returned, 8 notices were successfully remailed following skip tracing or other efforts, and 3 notices remained undeliverable. *Id.* Following final approval of the Settlement, Simpluris will issue individual settlement award checks to the Class Members and Opt-In Plaintiffs. Settlement, at ¶ VIII.6.

Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, Defendants served CAFA notice on the U.S. Attorney General and all applicable state Attorney Generals on April 8, 2021. ECF 128.

---

[4] As the opt out deadline has yet to expire, Class Counsel will file a declaration from Simpluris attesting to the completion of the notice process, and as to whether any objections or opt-outs were filed or requested.

## II.    KEY TERMS OF SETTLEMENT

Defendants have agreed to pay a non-reversionary Gross Settlement Amount of $300,000.00 to settle all aspects of this Action for the Class and FLSA Opt-In Plaintiffs. Settlement, ¶ IV.1. Defendants will pay the Gross Settlement Amount into the Settlement Administrator's Qualified Settlement Fund ("QSF") fourteen days after the Effective Date. *Id.,* ¶ VI.2.[5] The Class and Opt-In Plaintiffs are identified in Exhibit 2 to the Settlement and are defined as follows:

- Class Members: all current and former independent contractors who were under contract with Odyssey and hauled less than truckload (LTL) loads for FAF under FAF's motor carrier authority at any time during the period beginning January 22, 2016 and continuing through November 4, 2020.[6]

- Opt-In Plaintiffs: individuals who submitted opt-in consent forms in this Action.

The Net Settlement Amount, which is the amount available to pay settlement awards to the Drivers, is defined as the Gross Settlement Amount less: Class Counsel's attorney fees, costs, and expenses (not to exceed 35% of the Gross Settlement Amount, or $105,000); a modest, Court-approved Service Award of up to $10,000 for Plaintiff Campbell; and any Court-approved administrative costs necessary to effectuate the terms of the Settlement Agreement, including any

---

[5] Pursuant to the Settlement, Defendants will also (a) correct and eliminate adverse credit reporting from Defendants, if any, vis-a-vis Class Participants and Opt-In Plaintiffs, (b) correct and eliminate any adverse employment database reporting (i.e., Drive A Check or similar databases) from Defendants, if any, excluding reports required by federal or state law, (c) identify a contact person with telephone number and email for whom Class Participants may raise issues related to (a) and (b) above and who will work to resolve such issues as they may arise, and (d) release Class Participants and Opt-In Plaintiffs who were not under contract with Odyssey as of November 4, 2020, from all known and unknown monetary claims, provided, however, that Class Participants and Opt-In Plaintiffs currently under contract shall remain responsible for any maintenance or repair expenses upon lease termination. Settlement, ¶ XI.3.

[6] The Class includes (a) all current and former independent contractors who were under contract with Odyssey and hauled LTL loads for FAF under FAF's motor carrier authority at any time during the period beginning January 22, 2016 and continuing through November 4, 2020 in the State of California (California Class); (b) all current and former independent contractors who were under contract with Odyssey and worked or hauled LTL loads for FAF under FAF's motor carrier authority at any time during the period beginning January 22, 2016 and continuing through November 4, 2020, who attended orientation in the State of Ohio (Ohio Class); and (c) individuals identified in Exhibit 2 to the Settlement, which lists the individuals who submitted opt-in consent forms in this Action (Opt-In Plaintiff(s)). Settlement, ¶ I.4.

costs incurred in connection with engaging the Settlement Administrator ($4,000.00[7]). *Id.*, ¶¶ I.2, I.18, IV.1, VI.1. The Net Settlement Amount is currently estimated to be $181,000.00. Cottrell Decl., ¶ 10.

All Class Members who do not opt-out of the Settlement and all Opt-In Plaintiffs (together, "Class Participants") will receive a *pro rata* portion of the Net Settlement Amount based on the number of settlement shares they are assigned. Settlement, ¶ VIII.2. Opt-In Plaintiffs will receive 1 settlement share per workweek during which any work was performed for Defendants nationwide at any time between January 22, 2016 and November 4, 2020. *Id.*, ¶ VIII.2.b. To reflect the applicable value of state law claims, Class Participants will also receive: 1 additional settlement share per workweek for workweeks during which any work was performed under contract with Odyssey while hauling LTL loads under FAF's motor carrier authority in California between January 22, 2016 and November 4, 2020; and 3 additional settlement shares each to reflect time spent at orientation in Ohio. *Id.* The total number of settlement shares for all Class Participants will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. *Id.*, ¶ VIII.2.c. That figure will then be multiplied by each Class Participant's number of settlement shares to determine the Class Participant's *pro rata* portion of the Net Settlement Amount *Id.*

Any amounts that are not redeemed or deposited by the Class Participants within 180 days of mailing will be paid over to the unclaimed property fund of the state of which the Class Participant or Opt-In Plaintiff is a resident in the name of the Class Participant to whom the funds belong. *Id.*, ¶ VIII.7.

The proposed release only binds Class Members who do not opt-out of the Settlement to claims alleged in the operative Complaint, based on the facts, theories, and claims pled in that Complaint. *Id.*, ¶ XI.1. Opt-In Plaintiffs will also release claims under the FLSA. *Id.*, ¶ XI.2. Plaintiff Campbell has additionally agreed to a general release in exchange for receipt of a Court-approved modest Service Award, which is based on his service to the class in initiating this case

---

[7] These costs were previously estimated at $4,803.43, ECF 126, but Simpluris capped its administrative fees to $4,000.00. Cottrell Decl., ¶ 10.

and working with counsel to investigate and prosecute this litigation. *See id.*; Cottrell Decl., ¶ 28. The releases run through the date of preliminary approval of the settlement and are effective upon the Effective Date. Settlement, ¶¶ I.30-31, IV.2, XI.1.

### III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AS TO THE CLASS

#### A.    The Terms of the Settlement Are Fair, Reasonable, and Adequate.

Settlement is the favored and encouraged course for complex class actions. *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009); *Whitlock v. FSL Mgmt., LLC*, 842 F.3d 1084, 1094 (6th Cir. 2016); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991). A court should approve a class action settlement if, after providing notice in a reasonable manner to all class members who would be bound by the proposal, the Court holds a hearing and finds that the proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e); *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007); *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). Once a settlement agreement is preliminarily approved, the class action settlement becomes presumptively reasonable. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000).

To decide whether a settlement is fair, reasonable, and adequate, a court considers: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW,* 497 F.3d at 631 (citations omitted). In light of these factors, the Court should find that the Settlement is fair, reasonable, and adequate, and finally approve it as to the Class.

#### 1.    The Settlement is the result of good-faith, arduous, and arm's length negotiations between experienced and capable counsel fully informed with extensive informal discovery and investigation, and there is no hint or collusion between or among the parties.

"[S]ettlement negotiations [that] were conducted at arm's-length by adversarial parties and experienced counsel ... itself is indicative of fairness, reasonableness, and adequacy." *Id.* at *17 (quoting *Dallas v. Alcatel-Lucent USA, Inc.*, 09-14596, 2013 U.S. Dist. LEXIS 71204, 2013 WL

2197624, at *9 (E.D. Mich. May 20, 2013)); *see also In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Oh. 2001) (when a "settlement is the result of extensive negotiations by experienced counsel, the Court should presume it fair."); *Smith v. Ajax Magnethermic Corp.*, 4:02CV0980, 2007 WL 3355080, at *5 (N.D. Oh. Nov. 7, 2007) ("The Sixth Circuit has held that, in the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'"); *Harbin v. Emergency Coverage Corp.*, No. 3:16-CV-125-TRM-HBG, 2017 U.S. Dist. LEXIS 204281, at *7 (E.D. Tenn. Nov. 21, 2017) (citing *In re Polyurethane Foam Antitrust Litig.*, 2012 U.S. Dist. LEXIS 192151, 2012 WL 12868246, at *4 (explaining that "[c]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary")).

Here, the proposed Settlement was the product of serious, informed, arm's-length negotiations between experienced, opposing counsel. These good-faith negotiations took place throughout the months prior to and during the Parties' full-day, remotely-held mediation with respected mediator, Michael Russell. Cottrell Decl., ¶ 9. *See also Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties."). The negotiations were detailed, time-consuming, and hard-fought. Cottrell Decl., ¶¶ 7, 9. Class Counsel scrutinized the strengths and weaknesses of the pending claims and, utilizing their extensive experience with wage and hour and unfair competition laws, engaged in intensive bargaining over the merits of the respective claims and defenses and the value of the Class claims under the circumstances and procedural posture of the case. *Id.*, ¶ 9.

Class Counsel's decision to enter into the Settlement was further informed by substantial informal discovery. *Id.*, ¶¶ 8-9. Defendants produced class-wide and collective-wide data points, including a sampling of all pay and time records for fifteen Class and Collective members, as well as the personnel file for the Plaintiff. *Id.*, ¶ 7. Class Counsel also engaged in significant outreach, completing detailed interviews with multiple Drivers to explore the strength of the Class claims. *Id.*, ¶ 8. Accordingly, the Settlement is fair, reasonable, and adequate under this first *UAW* factor.

### 2. This Action is a complex class and collective action, and continued litigation will consume significant resources of the parties and the Court.

In deciding whether a settlement is fair, reasonable, and adequate, a factor courts consider is whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *Granada Investments, Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983). A finding that the value of an immediate recovery outweighs the possibility of future relief can be made after a competent evaluation of the case by counsel. *Granada Investments, Inc. v. DWG Corp.*, 1:89CV0641, 1991 WL 338233, at *8 (N.D. Ohio Feb. 12, 1991), aff'd, 962 F.2d 1203 (6th Cir. 1992). The benefit of a proposed settlement framework "outweighs the value of any remedy that litigation might produce." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 628 (6th Cir. 2007).

The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. Cottrell Decl. ¶¶ 14, 20-25. If the Actions were to go to trial as a class and collective action (which Defendants would vigorously oppose if this Settlement were not approved), Class Counsel estimates that fees and costs would exceed $1,000,000. *Id.* ¶ 20. Litigating the class and collective action claims would require substantial additional preparation and discovery. *Id.* The issues here are complex and would be vigorously contested, resulting in significant time and expense if the litigation continues. *Id.* It would require depositions of the parties or their representatives and other witnesses, depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.* Barring a settlement, the Parties also would have to engage in extensive motions practice including for class certification, conditional decertification, any additional conditional certification motion, discovery motions, and dispositive motions. *Id.* Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. Given these risks, further litigation could result in no recovery for the Drivers at all. *Id.* Defendants likely have significant resources and could use them to litigate the case for years to come, including through multiple levels of appeals. *Id.*

10

In contrast to litigating this suit, resolving this case by means of the Settlement will yield a prompt, certain, and very substantial recovery for the Class Members. *Id.* ¶ 21; *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 525 (E.D. Mich. 2003) ("Certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal."). Such a result will benefit the Parties and the court system. *Id.* It will bring finality to nearly three years of arduous litigation and eight separate Actions, and will foreclose the possibility of expanding litigation, and thus, should be approved here. *See California v. eBay, Inc.*, No. 5:12-cv-05874-EJD, 2015 WL 5168666, *4 (N.D. Cal. Sept. 3, 2015) ("Since a negotiated resolution provides for a certain recovery in the face of uncertainty in litigation, this factor weighs in favor of settlement"); *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.").

### 3. The Settlement provides the Class with immediate and substantial relief, particularly in light of the fact that serious questions of law and fact exist, placing the outcome of this Action in doubt.

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (citations omitted). The critical question is "whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 631.

Here, the complexity, expense, and likely duration of this litigation weighs heavily in favor of the Court finding that the Settlement is adequate, fair, and reasonable. *See Brent v. Midland Funding, LLC*, No. 3:11-cv1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (citing to 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed.2002) that "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). With respect to the merits of Plaintiff's claims, Plaintiff believes that he will prevail in demonstrating that Drivers were not

properly reimbursed for miles they incurred in their own vehicles on Defendants' behalf. Defendants, however, will contend that, even if California law applies to some of Plaintiff's and other Drivers' work, they fully complied with applicable minimum wage requirements and believe numerous factors could preclude class-wide treatment. *See* Cottrell Decl. ¶¶ 22-24. Defendants will deny all liability and likely believe that their defenses are strong and that the Drivers were properly reimbursed for the expenses. *See id.*

Nonetheless, both Parties recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides. Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. Here, the issues are complex and are vigorously contested, resulting in significant time and expense if the litigation continues.

Defendants deny that they jointly employed Plaintiff and the Class Members. Settlement, ¶ XIII.4; Cottrell Decl. ¶ 12. Further, the Parties dispute which law applies to determine whether Defendants misclassified Plaintiff and the Class Members as to their state wage and hour claims and whether California or Ohio wage and hour laws apply to Plaintiff and the Class Members at all. *See id.* In addition, the Parties would each need to hire experts to review the voluminous pay and hours of service records of Class Members who performed work in either California or Ohio. Cottrell Decl. ¶ 12. The Parties further dispute whether the three-year limitations period under the FLSA applies, or whether the two-year period for non-willful violations would be applicable in this matter. *Id.* The Parties also dispute whether this case could be tried on a collective and class action basis. *Id.* The parties further dispute whether Plaintiff and the Drivers were in fact misclassified under applicable law and whether the applicability of potential liquidated damages would be mandated in this action. *Id.*

For example, based on case law regarding the definition of "consumer transaction" under the Ohio Consumer Protection Act, Plaintiff determined that the difficulty of litigating this claim is high, and in particular, for treble damages (as Plaintiff calculated above), and may not survive dispositive motion practice and may not be certified for purposes of class certification. *See*, *e.g.*, *Int'l Bhd. of Elec. Workers Union No. 8 v. King Elec. Servs., Inc.*, No. 3:13CV864, 2014 WL

1821044, at *2 (N.D. Ohio May 8, 2014) (dismissing OCSPA claim brought by electricians who alleged association that sponsored an apprenticeship program violated the OCSPA by falsely representing, among other things, how much the electricians would earn when starting the program and the on-the-job training and skills they would gain, finding program was not a "consumer transaction"); Cottrell Decl. ¶ 14.

These are only a few examples of the issues that make this Action complex. Barring a settlement, the Parties would need to prepare for and conduct a trial with numerous witnesses, experts and records. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. Given these risks, further litigation could result in no recovery for Class Members or a significant judgment against Defendants, which could bankrupt some of them, leaving nothing for the Class Members to recover. For these reasons, the value of an immediate and certain settlement far outweighs the uncertainty of any future relief, and the Settlement should be preliminarily approved. *Id.*

Because there are several important questions of law and fact regarding liability and damages that remain unresolved, this *UAW* factor also weighs in favor of approval of the Settlement. *See Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (citing to 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed.2002) that "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

### 4. Plaintiff's Counsel and the Plaintiff believe the Settlement is fair, adequate, and reasonable and in the best interests of the Class.

A review of the Settlement reveals the fairness, reasonableness, and adequacy of its terms. The Gross Settlement Amount of $300,000, resulting in a Net Settlement Amount of approximately $181,000, will result in fair and just relief to the Class Members. The Gross Settlement Amount represents approximately over 100% of the total exposure for the substantive claims in this action, excluding those attributable to the Ohio Consumer Protection Act, which presents additional, attendant risks for certification. *Id.,* ¶¶ 13-14. Even including claims under the Ohio Consumer Protection Act, the Gross Settlement Amount represents approximately 25%

of the total exposure of all substantive claims in this action. *Id.* ¶ 14.

The Settlement provides for an average recovery of $2,742.42 per Driver. *Id.* ¶ 19. The largest recovery for a Driver under the Settlement is an impressive $27,533.67; 2 Drivers will receive over $10,000; and 8 Class Members will receive over $5,000. *Id.* These results are well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. *See id.* The final settlement amount takes into account the substantial risks inherent in any class action wage-and-hour case, as well as the procedural posture of the Actions and the specific defenses asserted by Defendants, many of which are unique to this case. *See id.* ¶¶ 19-21.

Plaintiff's and Class Counsel's confidence in the fairness, adequacy, and reasonableness of the Settlement is further underscored by the fact that no Class Members have objected to or opted out of the Settlement. *See id.* ¶ 18. This shows widespread support for the Settlement among Class Members, and gives rise to a presumption of fairness. Given the overwhelming support in the Settlement and the high value of the individual settlement awards to the Drivers, Plaintiff and Plaintiff's Counsel believe the Settlement is fair, adequate, and reasonable and in the best interest of the Class.

### 5.    The best practicable notice was provided to the Class Members in accordance with the process approved by the Court.

The Court must ensure that Class Members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Rule 23(e)(1) requires that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal"

Here, the Notice of Settlement as sent to the Class Members summarized the proceedings necessary to provide context for the Settlement and summarize the terms and conditions of the Settlement. Cottrell Decl., ¶ 15. Once this Court approved Plaintiff's proposed Notice, the

Settlement Administrator followed all of the procedures set forth in the Court-approved notice plan. Reasonable steps have been taken to ensure that all Class Members receive the Notice: the Settlement Administrator mailed the Notice to all Drivers, and re-mailed the Notice where possible, leaving only 3 undelivered Notices. *Id.,* ¶¶ 16-18. Although the Notice Deadline has yet to expire, **zero** Class Members have objected to or opted out of the Settlement. *Id.*, ¶ 18. Thus, this sixth *UAW* factor also weighs in favor of final approval of the Settlement.

### B. The Court Should Finally Certify the Class.

In the Court's March 30, 2021 order granting preliminary approval of the Settlement, the Court granted conditional certification of the provisional proposed Class. Now that notice has been effectuated, the Court should finally certify the class in its Final Approval Order.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). Here, the proposed Class consists of approximately 66 Class Members. Cottrell Decl. ¶ 11. While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with fewer than 35 class members. *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir.1974) (joinder of class of 35 was impracticable). *See also French v. Essentially Yours Indus., Inc*., 1:07-CV-817, 2008 WL 2788511, at *3 (W.D. Mich. July 16, 2008) ("it is generally accepted that class of 40 or more members is sufficient to establish numerosity"); *In re Skelaxin Metaxalone Antitrust Litig*., No. MDL No. 2343, 2014 U.S. Dist. LEXIS 60214, at *12 (E.D. Tenn. Apr. 30, 2014) (finding a class of at least 48 members throughout the United States so numerous that joinder of all members is impracticable). These members are easily identifiable and have in fact have already been identified through the Settlement. Settlement, Ex. 2.

The commonality requirement[8] is satisfied for purposes of settlement because there is a common question of law as to whether Defendants jointly employed Class Members, whether Defendants misclassified Class Members as independent contractors, and whether, as a result of

---

[8] Plaintiff satisfies the commonality requirement because his "claims … depend upon a common contention" that is "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

15

such misclassification, violated California and Ohio state wage and hour laws and unfair competition laws by requiring Class Members to perform work without proper compensation and without the opportunity to take compliant meal and rest periods. These issues apply to all of the claims of the proposed Class, and would be central issues on an appeal if the case were further litigated.

The typicality requirement is satisfied for purposes of settlement. "Courts liberally construe the typicality requirement." *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2010 WL 3521747, at *5 (E.D. Tenn. Sept. 7, 2010). To establish typicality, Plaintiff need show only that the claims or defenses of the class arise from the same practice and are based on the same legal theory as those of Plaintiff. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Here, Plaintiff's claims are typical of those of the Class Members because they arise from the same alleged practice of misclassification common throughout the Class and the same pay practices under the various agreements between the Parties. Compl., ¶¶ 25-46.

The adequacy of representation requirement is satisfied for purposes of settlement. The Sixth Circuit "looks to two criteria for determining adequacy of representation: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012). Courts "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Id.* Here, Class Counsel's declaration demonstrates that Plaintiff has adequately performed his duties as class representative. Cottrell Decl. ¶ 16. There is no evidence that Plaintiff has any conflict of interest with the Proposed Class. The declaration of Class Counsel further demonstrates that they have competently represented the proposed class to date and are qualified to represent the Class.

With respect to the requirements of Fed. R. Civ. P. 23(b)(3), for purposes of this Settlement, common questions of law or fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See also Amgen, Inc. v. Conn. Retirement Plans & Trust Funds,* 133

S. Ct. 1184, 1196 (2013). Given that Defendants have, by agreeing to the Settlement, agreed to make payments of unpaid wages, and have effectively waived, for purposes of Settlement, any opportunity they may have to present evidence with regard to proper payment under the California and Ohio state laws, individualized questions do not predominate and a class action is superior to other available methods of adjudication.

This class action Settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). Accordingly, class treatment is efficient and warranted, and the Court should conditionally finally certify the Class for settlement purposes.

## IV. THE COURT SHOULD GRANT PLAINTIFF'S AND CLASS COUNSEL'S REQUESTS FOR SERVICE AWARD AND ATTORNEYS' FEES AND COSTS

### A. Plaintiff's Requested Service Award Is Reasonable and Should be Granted.

Service awards "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig*., 264 F.3d 712, 722 (7th Cir. 2001); *Otis v. TAH Pizza, Inc. et al*., Case 2:18-cv-00111 (E.D. Tenn.) ($5,000.00). *Enter. Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving six service awards of $50,000 each); *see also Dillow v. Home Care Network, In*c., No. 2:16-cv-612, 2018 U.S. Dist. LEXIS 170579, 2018 WL 4776977, at *8 (S.D. Ohio Oct. 3, 2018) (granting $8,500 service award from a $113,224 settlement, because named plaintiff "contributed her efforts to the lawsuit by providing information and documents to her counsel, remaining informed and involved throughout the litigation, contacting and consulting her counsel concerning the litigation, reviewing documents and settlement proposals, and was willing to testify at a trial").

Here, Plaintiff requests that the Court grant a modest service award of $10,000 to Plaintiff Campbell. Plaintiff's requested service award should not only be approved because it is within the limits of awards approved in various district courts, but also because he substantially assisted counsel in achieving this settlement on behalf of the class, and his time and effort are deserving of a service award. See Cottrell Decl., ¶¶ 26-28; Declaration of Kevin Campbell ("Campbell Decl."), ¶¶ 3-16. Plaintiff expended approximately 70 hours of his own time to play the critical role as a named plaintiff and class and collective representative. Campbell Decl., ¶¶ 9-14. He was

responsible for providing guidance and assistance on numerous occasions to Plaintiffs' Counsel, he heavily participated in the complaint and settlement process, he submitted numerous written declarations and provided invaluable information and documents that were necessary to litigate and ultimately mediate this matter, all while enduring the reputational risks of publicly affiliating himself as a litigant against companies like the Defendants. *See id*. at ¶¶ 9-14. Moreover, Plaintiff agreed to a general release, unlike other Drivers, and Defendants do not oppose Plaintiff's requested service award.  Settlement, ¶ IV.2.

There is no question that the other Drivers have substantially benefited from his actions. Without Plaintiff's efforts, this case would not have been brought and this Settlement would not have been achieved. Class Members appear to agree as well, as ***zero*** Class Members have objected to the proposed service award. *See* Cottrell Decl., ¶ 18. The Court should grant final approval to the requested service award as reasonable.

### B.     The Requested Attorneys' Fees and Costs Are Reasonable.

In a class action settlement, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). District courts have the power to award reasonable attorneys' fees and costs in class action cases, and any such award for attorneys fees in common fund cases like this one need only be "reasonable under the circumstances." *Weitz & Luxenberg, P.C. v. Sulzer Orthopedics, Inc. (In re Sulzer Orthopedics, Inc.)*, 398 F.3d 778, 780 (6th Cir. 2005) (citations omitted).

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props*., 9 F.3d 513, 516 (6th Cir. 1993). District courts have the discretion to select either the lodestar method or the percentage of the fund method depending on the unique circumstances of the class action matters before them. *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995).

Courts in the Sixth Circuit evaluate the reasonableness of an award that is a percentage of the common fund using six factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a

contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *New Eng. Health Care Emples. Pension Fund v. Fruit of the Loom, Inc*., 234 F.3d 627, 634 (W.D. Ky., 2006); *Bowling v. Pfizer, Inc*., 102 F.3d 777, 780 (6th Cir. 1996); *Smillie v. Park Chem. Co*., 710 F.2d 271, 275 (6th Cir. 1983).

Here, pursuant to the Settlement, Class Counsel requests, and Defendants do not oppose, 35% of the Gross Settlement Amount (i.e. $105,000), to reimburse Class Counsel for reasonable attorney fees, costs, and expenses. Settlement, ¶ V.1. A review of each of the above factors weigh greatly in favor of the reasonableness of Class Counsel's request, and this Court should accordingly grant Class Counsel's request.

### 1. The requested attorneys' fees should be approved pursuant to the percentage of the fund method.

"In class action cases, counsel who recover a common fund settlement . . . are entitled to reasonable attorney's fees paid from the fund." *Mehling v. New York Life Ins. Co*., 248 F.R.D. 455, 464 (E.D. Pa. 2008). A percentage of the fund approach "more accurately reflects the results achieved" than the lodestar method. *Bldg. Serv. Local 47 Cleaning Contractors Pension*, 46 F.3d at 1401. Courts also have recognized that common fund recoveries based on contingency fee representation, as is the case here, are especially beneficial to employee plaintiffs who may not possess the financial resources to hire counsel on an hourly basis to pursue their claim. *Capsolas v. Pasta Res. Inc*., 2012 WL 4760910, *8 (S.D.N.Y. Oct. 5, 2012).

Here, application of the percentage of the fund recovery method supports Class Counsel's request. After deducting $3,972.92 in Class Counsel's costs, the Settlement allocates fees of less than 33.7% of the Gross Settlement Amount. Cottrell Decl., ¶¶ 29-45. This percentage recovery falls well within the range that is regularly approved by courts within the Sixth Circuit. *See, e.g., Mitcham v. Intrepid U.S.A., Inc*., 2019 U.S. Dist. LEXIS 88864, *11 (W.D. Ky., May 28, 2019) (approving attorney fee award of 40 percent; *Otis v. TAH Pizza, Inc. et al*., Case 2: 18-cv-00111 (E.D. Tenn.) (same); *Barnes v. Winking Lizard Inc*., 2019 WL 1614822 *19 (N.D. Ohio March 26, 2019) (same); *Hebert v. Chesapeake Operating, Inc*., 2019 WL 4574509 *21 (S.D. Ohio September 20, 2019) (holding that an attorney fee award of 33% is customary in similar cases.);

*Doyle v. Be Hurd, Inc. et al*, Case 3:20-cv-138 (E.D. Tenn.) (approving attorneys' fees awards of 33%).

<strong>2.     The requested attorneys' fees are reasonable.</strong>

District courts consider multiple factors to determine the reasonableness of a fee request, including: "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). Here, all six factors counsel this Court to determine that the requested attorneys' fees are reasonable.

First, the Settlement represents a significant recovery on behalf of the Drivers. Not only does the Settlement provide Drivers with substantial average recoveries of $2,742,42 per Driver, with the largest recovery being an impressive $27,533.67, the Gross Settlement Amount represents over 100% of the total exposure for the substantive claims in this action, excluding those attributable to the Ohio Consumer Protection Act, which presents additional, attendant risks for certification. Moreover, the Settlement also provides injunctive relief, requiring, *inter alia*, Defendants to correct and eliminate adverse credit reporting, employment database reporting. Settlement, ¶ XI.3. These highly favorable terms were achieved by Class Counsel's skill and perseverance, in light of the risks presented by continued litigation with Defendants. Moreover, the notable absence of any requests for exclusions or objections to the Settlement further demonstrates the Class's approval of the result in this case and further bolsters counsel's reasonable request for fees. *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("The Class's reaction to the requested fee award is also important evidence of the fairness and reasonableness of the fee request"). Thus, the "value of the benefit rendered to the plaintiff class" factor supports the proposed fee award.

Second, as Class Counsel accepted this case on a contingency fee basis, Class Counsel did not receive any payment for their work to-date in this case. Regardless, a lodestar-crosscheck of Class Counsel's lodestar is already well within the range of reasonableness. Class Counsel's

accompanying declaration provide a summary of the lodestar, time and hourly rates, as well as descriptions of the nature of work performed. *See* Cottrell Decl. ¶ 30, Ex. 2; Declaration of Robert S. Boulter in Support of Plaintiff's Motion for Approval of Class Action Settlement ("Boulter Decl."). Class Counsel's rates have been found reasonable and consistent with the market by this court, as well as in numerous cases in this District. *Thieriot v. Celtic Ins. Co.,* No. C 10-04462 LB, 2011 U.S. Dist. LEXIS 44852, at *17 (N.D. Cal. Apr. 21, 2011) (finding SWCK's rates reasonable and citing *Cherry, et al. v. The City College of San Francisco*, Docket No. C 04-4981 WHA, ECF No. 673 (Apr. 13, 2006 order) (finding SWCK's rates to be reasonable and consistent with the market))).[9] Class Counsel has spent over 438 hours litigating this case, for a current lodestar of $368,149.20, not including all the work remaining to bring the Settlement to a close. *See* Cottrell Decl. ¶ 30; Boulter Decl. ¶ 7. Even without subtracting Class Counsel's reasonable costs from the $105,000 allotted to attorneys' fees and costs pursuant to the Settlement, and even only including

---

[9] The hourly rates for this litigation team were also found to be reasonable in this District for purposes of a lodestar crosscheck by Judge Vince Chhabria in *Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304, 305 (N.D. Cal. Oct. 23, 2019) (approving a one-third fee award, and in late 2019, finding that "the fee award is further supported by a lodestar crosscheck, whereby it finds that the hourly rates of Schneider Wallace Cottrell Konecky Wotkyns LLP … are reasonable, and that the estimated hours expended are reasonable."); *see also Jones, et al. v. CertifiedSafety, et al.,* 3:2017-cv-02229, ECF 232 (N.D. Cal. June 1, 2020) (Chen, J.) (approving a one-third fee award proposed by fee motion stating SWCK's hourly rates for purposes of lodestar cross-check). The Orange County Superior Court also recently found hourly rates for this litigation team, as set forth here, to be reasonable for purposes of a lodestar crosscheck on January 31, 2020 in *El Pollo Loco Wage and Hour Cases,* Case No. JCCP 4957, Orange County Superior Court, order dated January 31, 2020. The Sacramento Superior Court also granted final approval of a class action settlement and SWCK's fee request pursuant to a lodestar crosscheck that incorporated the exact rates set forth here. *Manni v. Eugene N. Gordon, Inc. d/b/a La-Z-Boy Furniture Galleries*, Case No. 34-2017-00223592, Sacramento Superior Court, order dated September 5, 2019. In *Shaw, et al. v. AMN Services, LLC, et al.,* No. 3:16-cv-02816, ECF 167 (N.D. Cal. May 31, 2019), the Court conducted a lodestar cross check and held that "the hourly rates charged by [SWCK] are within the prevailing range of hourly rates charged by attorneys providing similar services in class action, wage-and-hour cases in California." The Court further held that the "hourly rates of Class Counsel [SWCK] also have consistently and recently been approved as reasonable by the courts." Other approvals of SWCK's hourly rates include: *Knapp v. Art.com, Inc.*, No. 3:16-cv-00768-WHO, ECF 89 (N.D. Cal. October 24, 2018); *Villalpando v. Exel Direct Inc.,* No. 3:12-cv-04137-JCS, 2016 WL 7740854, at *1 (N.D. Cal. Dec. 12, 2016); *Winans v. Emeritus Corp*., 2016 WL 107574, at *8 (N.D. Cal. Jan. 11, 2016); *Carnes v. Atria Senior Living Inc*., Case No. 14-cv-02727-VC, ECF 115, at 4-5 (N.D. Cal. July 12, 2016); *Meza v. S.S. Skikos, Inc.*, Case No. 3:15-cv-01889-TEH, ECF 58, at 4 (N.D. Cal. May 25, 2016); *Thieriot,* 2011 U.S. Dist. LEXIS 44852, at *18-19 (Beeler, M.J.) (approving one-third fee award, supported by a lodestar crosscheck, and finding SWCK hourly rates reasonable).

SWCK's lodestar, the requested fee award represents a ***negative*** multiplier of the current lodestar. *Id.,* ¶ 45. This presumptively demonstrates the reasonableness of the requested fees. *See, e.g., Rikos v. P&G,* No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (S.D. Ohio Apr. 30, 2018) (citing *Walls v. JPMorgan Chase Bank, N.A.,* Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at *8 (W.D. Ky. Oct. 13, 2016)).

Third, Class Counsel represented Plaintiff on a contingency fee basis. Class Counsel undertook all the risk of this litigation on a completely contingent fee basis, expending time and incurring expenses with the understanding that there was no guarantee of compensation or reimbursement. Substantial fee awards encourage attorneys to incur the risks of litigating cases on behalf of clients who cannot pay hourly rates and would therefore not otherwise have realistic access to courts. That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue here. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations."). By incentivizing plaintiff's attorneys to take on risky, high-stakes, and important litigation, and devote themselves to it aggressively and fully, fee awards serve an important purpose and extend the access of top legal talent to constituencies such as low-wage workers who would otherwise never be able to confront employers, who are themselves represented by top-rated attorneys. In this case, although the risks were front and center, Plaintiff and Class Counsel committed themselves to developing and pressing Plaintiff's legal claims to enforce the employees' rights and maximize the class and collective recovery despite Defendant's deteriorating financial condition. During the litigation, Class Counsel had to turn away other cases to remain sufficiently resourced for this one. *See* Cottrell Decl. ¶¶ 39-42; *Whittington v. Taco Bell of Am., Inc.,* 2013 WL 6022972, *6 (D. Colo., November 13, 2013) ("[t]here is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts."). Accordingly, the requested fee award is appropriate here.

Fourth, Courts in the Sixth Circuit have held that "society has a stake in rewarding the

efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, *14 (S.D. Ohio, June 24, 2011). Additionally, the remedial nature of the FLSA relies on attorney representation for low wage workers like the Drivers involved here. Without enforcement of the FLSA's attorneys' fees provision through cases – and motions – like this one, many workers would be left without recourse. Thus, society's stake in rewarding Class Counsel here maintains incentive to other attorneys to represent similar low wage workers who would otherwise be unable to bring any claims.

Fifth, this litigation is fundamentally complex as a class and collective action. Analysis of the overarching legal claims and defenses in this action, such as the certifiability of Plaintiff's claims and whether Drivers were misclassified, requires not only extensive knowledge of applicable caselaw, but further deeper understanding on how to litigate class actions and collective actions under the FLSA.

Sixth, the Drivers are represented by highly experienced and skilled counsel who focus almost exclusively on wage and hour class actions. Cottrell Decl. ¶¶ 4-6, 29-46; Boulter Decl. ¶¶4-6. Class Counsel has been recognized as a leading plaintiffs' firm nationally for their work on behalf of employees in wage and hour litigation. Cottrell Decl. ¶ 4. Class Counsel used its extensive skill and experience to navigate the complex provisions of class actions, the FLSA, and the wage and hour laws of the states where Drivers worked. *Id.* ¶¶ 4-6, 8-9, 12-14, 19, 25, 30-46. Accordingly, Class Counsel's expertise and skill in this area of law, coupled with their willingness to take on risky cases, justify the fee request.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the Settlement is fair, adequate, and reasonable, and will result in immediate, considerable payments to the Class Members and Opt-In Plaintiffs. Plaintiff respectfully requests that this Court finally approve the Settlement in accordance with the schedule set forth herein and grant Plaintiff's requests for attorneys' fees and costs and service award.

///

///

///

Dated: June 24, 2021                    Respectfully submitted,

*/s/ David C. Leimbach*
Carolyn H. Cottrell (admitted *pro hac vice*)
David C. Leimbach (admitted *pro hac vice*)
Michelle S. Lim (admitted *pro hac vice*)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com
mlim@schneiderwallace.com

Robert S. Boulter (admitted *pro hac vice*)
LAW OFFICES OF ROBERT S. BOULTER
1101 Fifth Avenue, Suite 235
San Rafael, California 94901
Telephone: (415) 233-7100
Facsimile: (415) 233-7101
rsb@boulter-law.com

Attorneys for Plaintiff, the putative Class
and Collective

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the for the United States District Court, Eastern District of Tennessee, by using the Court's Case Management/Electronic Case Filing (CM/ECF) system, on June 24, 2021.

Dated: June 24, 2021                    Respectfully submitted,

                                        /s/ David C. Leimbach
                                        David C. Leimbach (admitted *pro hac vice*)
                                        SCHNEIDER WALLACE
                                        COTTRELL KONECKY LLP
                                        2000 Powell Street, Suite 1400
                                        Emeryville, California 94608
                                        Telephone: (415) 421-7100
                                        Facsimile: (415) 421-7105
                                        dleimbach@schneiderwallace.com